IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KIMBERLY-CLARK CORPORATION,       §
                                  §
              Plaintiff,          §
                                  §   Civil Action No. 3:05-CV-0475-D
VS.                               §
                                  §
CONTINENTAL CASUALTY              §
COMPANY,                          §
                                  §
              Defendant.          §

MEMORANDUM OPINION
AND ORDER

The instant motion presents the question whether this action should be dismissed based on the doctrine of *forum non conveniens*. Concluding that the private and public interest factors do not adequately demonstrate that the case should be litigated in Brazil, the court denies the motion.

I

Plaintiff Kimberly-Clark Corporation ("KC") sues defendant Continental Casualty Company ("Continental") to recover under the Employee Dishonesty Coverage Form of a crime insurance policy ("Policy") and on related claims. KC alleges that it sustained losses in connection with the purchase of invalid tax credits by three of its Brazilian subsidiaries. According to KC, Reginaldo Fernandes ("Fernandes"), the former Controller of its Brazilian subsidiary, Kimberly-Clark Kenko Industria e Comercio Ltda., conspired with tax credit sellers in Brazil to purchase invalid and worthless third-party tax credits in exchange for bribes totaling

more than $250,000.  KC contends that Fernandes' actions resulted in losses of approximately $40 million to the three subsidiaries.[1] KC made a claim under the Policy, which Continental denied.

KC posits that the central dispute in this case is one of contract interpretation——specifically, the meaning of the word "intent" in the Policy.  Before 1996 the Policy provided that the employee must possess a "manifest intent" to cause the insured to sustain loss.  A 1996 Policy amendment substituted "intent" for "manifest intent."  When Continental denied KC's claim, it explained that the Policy required that the employee act with "subjective intent or purpose" to cause the insured to sustain loss.  D. App. 52. Continental cited two cases——one from the Fifth Circuit and one from this court——to support this interpretation of "intent."  KC maintains that the parties' course of performance demonstrates that a "reckless disregard" standard should apply.

In contrast to KC's position, Continental maintains that the central issue is a factual dispute regarding whether Fernandes' possessed the requisite "intent" when he orchestrated the purchase of the invalid tax credits.  KC alleges that Fernandes knew both that the third-party tax credits were invalid at the time of their purchase and that their purchase would result in financial loss to the subsidiaries.  Continental contends that Fernandes did not know that harm would result; rather, he acted with the intent to

---

[1]The Policy coverage limit is $20 million.

- 2 -

benefit, not harm, the subsidiaries. It posits that Fernandes acted under extreme pressure to increase profits and in the belief that purchasing the third-party tax credits would do so. Continental also maintains that Fernandes believed he could resolve any potential problems regarding the validity of the tax credits by bribing Brazilian revenue officials.

Continental moves to dismiss the case based on the doctrine of *forum non conveniens*, contending it should be litigated in the courts of Brazil. KC opposes the motion.

II

> Under the federal doctrine of *forum non conveniens*, when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994) (internal quotations omitted) (alterations in original) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The doctrine of *forum non conveniens* applies "in all cases regardless of their jurisdictional bases or subject matter." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1163 (5th Cir. 1987) (en banc) (emphasis omitted), *vacated on other grounds sub nom. Pan Am.*

- 3 -

*World Airways, Inc. v. Lopez*, 490 U.S. 1032, *opinion reinstated in part on other grounds*, 883 F.2d 17 (5th Cir. 1989) (en banc) (per curiam).  The court exercises its discretion based on consideration of private and public factors that trace their origin to *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Showing some deference to the plaintiff's choice of forum, the court must consider the following private interest factors:

> [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; [3] probability of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforc[ea]bility of a judgment if one is obtained.

*Robinson v. TCI/US W. Commc'ns, Inc.*, 117 F.3d 900, 908 (5th Cir. 1997) (quoting *Air Crash*, 821 F.2d at 1162); *see also Am. Dredging*, 510 U.S. at 448.  The public interest factors include (1) the administrative difficulties courts face when litigation is piled up in congested centers instead of being handled at its origin; (2) the burden of jury duty imposed upon the people of a community that has no relation to the litigation; (3) in cases that touch the affairs of many persons, the interest in holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only; (4) the local interest in having localized controversies decided at home; and (5) the

- 4 -

appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. *Am. Dredging*, 510 U.S. at 448-49 (quoting *Gulf Oil*, 330 U.S. at 508-09).

This court must follow a controlling procedural framework in applying the principles of *forum non conveniens* so that it exercises structured discretion. *See Air Crash*, 821 F.2d at 1165. The court first decides whether an available and adequate forum exists. *Id*. A foreign forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Id*. A defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis. *Veba-Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir. 1983). A foreign forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Air Crash,* 821 F.2d at 1165 (citations omitted). If the available remedy is "so clearly inadequate or unsatisfactory such that it is no remedy at all," however, this can be given "substantial weight" by the court. *Id.* at 1164 n.27 (citing *Piper,* 454 U.S. at 254-55). If the court concludes the foreign forum is both available and adequate, it must then address the relevant factors of private interest, giving

- 5 -

appropriate deference to plaintiff's initial choice of forum. *Id.* at 1165. If the court determines that the private interests do not weigh in favor of dismissal, it must then consider the public interest factors. *Id.*

Continental has the burden of establishing that the doctrine of *forum non conveniens* applies. *See Robinson*, 117 F.3d at 907. Its "burden of persuasion runs to all the elements of the forum non conveniens analysis." *Air Crash*, 821 F.2d at 1164. While the burden is on the movant to establish that an alternative forum would be clearly more convenient, it need not submit overly-detailed affidavits, such as those that identify all the witnesses it would call and the testimony it would offer. *See Piper,* 454 U.S. at 258. The *forum non conveniens* motion is made "precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview," such that "[r]equiring extensive investigation would defeat the purpose of [the] motion." *Id.* Of course, the movant must provide "enough information to enable the District Court to balance the parties' interests." *Id.* The court must review the motion in light of the status of the case at the time the motion was filed. *See Air Crash*, 821 F.2d at 1166.

III

The court first considers whether the court system of Brazil is an available and adequate forum. A foreign forum is available

if "the entire case and all parties can come within the jurisdiction of that forum." *Id.* at 1165.  Continental contends that Brazil is an available forum because it will submit to the jurisdiction of the Brazilian court system.  KC counters that, even if this is so, a Brazilian court would not exercise jurisdiction.  To support its position, KC offers the affidavit of its expert witness, Hermes Marcelo Huck ("Huck"), a Brazilian attorney and law professor at the University of Sao Paulo.  Huck avers that a Brazilian court might not exercise jurisdiction in this case under Article 88(III) of the Brazilian Code of Civil Procedure and under Brazil's "effectiveness principle."  P. App. 155.  At no point does Huck contend that a Brazilian court *would* refuse to exercise jurisdiction; he merely maintains that "a Brazilian court *may* refuse to exercise jurisdiction in this case."  *Id.* (emphasis added).  If an analysis of the private and public factors weighs in favor of dismissal, the court must condition dismissal on Continental's submission to and a Brazilian court's exercise of jurisdiction.  *See Air Crash*, 821 F.2d at 1166; *see also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 (5th Cir. 1991).  Continental's "agreement to submit to the jurisdiction of the foreign forum, along with a conditional dismissal, 'obviates the need for extensive inquiry into foreign jurisdictional law since, if the foreign court refuses to take jurisdiction, "[KC] is still protected by the conditional nature of the dismissal."'"  *Veba-*

*Chemie*, 711 F.2d at 1249 n.12 (quoting *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 392 n.12 (5th Cir. 1983)); *see also Boonma v. Bredimus*, 2005 WL 1831967, at *2 (N.D. Tex. July 29) (Fitzwater, J.) ("A defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of forum non conveniens analysis."), *appeal docketed*, No. 05-11085 (5th Cir. Oct. 19, 2005); *Punyee ex rel. Doe v. Bredimus*, 2004 WL 2511144, at *4 (N.D. Tex. Nov. 5, 2004) (Fish, C.J.) ("[T]he requirement of availability is satisfied when the defendant is amenable to process in the foreign country."). Because Continental has agreed to submit to the jurisdiction of the Brazilian court system, Brazil is an available forum.

A foreign forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Air Crash,* 821 F.2d at 1165 (citations omitted). Continental posits that Brazil is an adequate forum because Brazil recognizes claims for breach of an insurance contract, has a procedure for declaratory judgment, and provides a mechanism for recovery of litigation expenses by the prevailing party. Moreover, Brazil has procedures for producing evidence and investigating facts, has a mechanism for compelling witnesses to attend hearings and trial in Brazil (but not in the United States), allows for recovering actual and sometimes "moral" damages, has a well-

established appellate process, and will apply the law of a foreign jurisdiction when appropriate.  KC counters that there are chronic delays in Brazil's legal system that render it inadequate.  It also points to the additional time required to translate into Portuguese the Policy, Texas statutes, and Texas case law and the time required for a Brazilian court to familiarize itself with Texas law, assuming it would conclude that Texas law applied.  But KC's expert, Huck, approximates that a trial in Brazil would take two years and that an appeal would take four years.  Although six years may be longer than would be required to reach a final disposition in the United States, this is insufficient to deprive KC of all remedies and render Brazil an inadequate forum.  *Cf. Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1228 (3d Cir. 1995) (holding that India was inadequate forum because average case would take 15 to 20 years for trial with an additional three to six years for appeal).  Thus the court concludes that Brazil is an available and adequate forum.

IV

Normally, the court would now turn directly to an application of the private and, if necessary, public interest factors.  But in this case, their application is complicated by the fact that the parties dispute what is the primary issue in the case.  Continental contends it is a factual dispute regarding Fernandes' state of mind.  KC maintains that the primary dispute is one of contract

interpretation concerning the meaning of the word "intent" in the Policy.

Continental argues that the court should discount the contract interpretation issue when applying the factors because the word "intent" in the Policy is not ambiguous. Were the court to agree with Continental, this would give great weight to granting the *forum non conveniens* motion. If the only significant issue is a factual one centered around conduct that occurred in Brazil——i.e., what was Fernandes' intent——then the private interest factors would likely substantially favor dismissal since a substantial amount of relevant evidence is located in Brazil. Continental has the burden of demonstrating that the contract interpretation issue is not significant. *See Air Crash*, 821 F.2d at 1164 (Continental's "burden of persuasion runs to all the elements of the forum non conveniens analysis.") Unless Continental can make this showing, the court will examine the private and public interest factors in the context of both the factual dispute and the contract interpretation issue on which KC relies.

Continental has not sufficiently demonstrated that the contract interpretation issue is not significant. Although Continental asserts that the word "intent" is not ambiguous, it cites no authority to support this contention. Indeed, Continental admits that "the meaning of the word 'intent' will have to be construed by this [c]ourt." D. Rep. Br. at 1. Had Continental

adduced authority that demonstrates that KC's proffered interpretation of "intent" is implausible, the court might discount the contract interpretation issue. The court must examine the motion, however, in light of the status of the case at the time the motion was filed. *See Air Crash*, 821 F.2d at 1166. At this point, both the factual dispute and the contract interpretation issue appear to be significant, and the court will apply the private and public interest factors accordingly.

V

The court first analyzes the private interest factors.

A

Continental contends that Brazil would be a more convenient forum because of greater ease of access to the sources of proof. It posits that all the relevant conduct in this case occurred in Brazil and that all relevant witnesses are located there. Between Continental and KC, over 100 people have been interviewed, and Continental maintains that most of them, virtually all of whom reside in Brazil, have knowledge of facts material to its defense. Continental intends to call many of them to testify, either by deposition or at trial. It identifies by name 18 of them, 13 of whom it believes are not employed by KC and reside in Brazil, and none of whom are believed to reside in the United States. The potential testimony of Continental's proffered witnesses would seem to be relevant only to the factual inquiry concerning Fernandes'

state of mind.

KC counters that the testimony of the primary witness relevant to Fernandes' state of mind—Fernandes himself—has been obtained by deposition under Tex. R. Civ. P. 202, in the event he is unable to testify.[2]  KC identifies nearly 30 witnesses who it believes have knowledge relevant to the contract interpretation issue, all of whom are located in Texas or elsewhere in the United States.

The witnesses material to the contract interpretation issue are centered in the United States, and the witnesses material to the factual dispute are centered in Brazil.  Because Continental bears the burden of proof on each element of the *forum non conveniens* analysis, and because the court gives some degree of deference to KC's forum choice, the court concludes that this factor somewhat favors KC.

B

The court next considers the availability of compulsory process for ensuring attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses, assessing the witnesses needed for each issue in turn.

_____

[2]The court notes that there is a potential obstacle to the use of Fernandes' deposition at trial.  The deposition was obtained by order of a Texas state court, which ordered Fernandes' deposition despite finding that Continental had not received the requisite notice under Rule 202.  The state court "expressly reserve[d] for determination by the court in which suit is then pending the question of whether any transcript thereof may be used by [KC] against [Continental] in any lawsuit between the parties in which Mr. Fernandes' testimony may be relevant." P. App. 51.

- 12 -

First, the court addresses the witnesses needed for the interpretation of the Policy term "intent." These witnesses are centered in the United States and would presumably be within the subpoena power of this court. A Brazilian court would not have the power to compel the testimony of KC's desired witnesses. But 14 of the nearly 30 witnesses whom KC has identified are current employees of KC or Continental. Therefore, compulsory process would be unnecessary for many of KC's witnesses. Although it would certainly be more costly to transport these witnesses to Brazil, KC would be able to secure the testimony of many of them if the case were tried in Brazil.

Second, the court considers the witnesses needed for the fact issue of Fernandes' state of mind. These witnesses are centered in Brazil; none is alleged to reside in the United States. Most are no longer employed by KC. Thus compulsory process would likely be needed to secure their testimony. Although the testimony of the chief witness, Fernandes, has been obtained by deposition, none of the remaining witnesses is alleged to fall within the subpoena power of the court. The cost of transporting willing witnesses to the United States would be significant.[3] If the trial were held in Brazil, many witnesses could presumably be compelled to testify in Brazil. But Article 407 of the Brazilian Code of Civil Procedure

---

[3]On May 17, 2005 Continental's attorney, Michael Keeley, Esquire, received an airfare quote from Sao Paolo to Dallas of $1,135 and a local Dallas hotel rate of $109 per night.

limits to ten the number of witnesses each party may call.  It further limits to three the number who may testify as to each disputed fact.  Thus it is likely that Continental would not be permitted to call all of the witnesses whom it desires if the trial were held in Brazil.

If the trial were held in the United States, the court would be unable to compel any unwilling witnesses from Brazil to testify as to the fact issue.  If the trial were held in Brazil, a Brazilian court could compel many of those witnesses to testify. Moreover, KC and Continental could provide access to many of the witnesses needed for the contract interpretation issue because they are still employed by the parties.  Thus the court concludes that this factor slightly favors litigating this dispute in Brazil.

C

Because the factor that considers probability of view of the premises is not relevant to this case, the court need not consider it.

D

The court next evaluates all practical considerations of efficiency and expense.  KC asserts that this factor favors trying the case in this forum because most relevant documents in Portuguese have already been translated into English, while few or none of the English documents has thus far been translated into Portuguese.  Thus while there would be a burden to translate

English documents into Portuguese for a trial in Brazil, there would be no such burden if the case remains in Texas.  Continental admits that many, if not most, of the relevant Portuguese documents have been translated into English.  It maintains that there are additional documents in Portuguese that have not yet been translated into English.  But because many, if not most, of the relevant documents in Portuguese have already been translated into English, the court concludes that this factor weighs in favor of keeping the case here.

E

After viewing the private interest factors together and giving appropriate deference to KC's forum selection, the court holds that the private interest factors weigh in favor of litigating the case in this forum.

VI

Because the private interest factors do not weigh in favor of dismissal, the court now considers the public interest factors. *See Robinson*, 117 F.3d at 908.

A

The court first addresses the administrative difficulties arising from congested courts.  Continental asserts that this factor supports litigating the case in Brazil, but it has failed to present any evidence to establish that this court is more congested than are the Brazilian courts.  *See Capital Currency Exch., N.V. v.*

- 15 -

*Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998) (holding that this factor favored neither British nor American forum where there was no indication in record that British courts are more or less congested than American courts). Because Continental has the burden of showing that this factor favors dismissal, the court holds that it supports litigating the case in this forum.

B

The court next evaluates the burden of jury duty. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*, 330 U.S. at 508-09. Texas jurors have a significant connection with this case because KC's principal place of business is in Texas. Continental is an Illinois corporation with its principal place of business in Illinois, and it is licensed to do business in Texas. The Policy was negotiated in, issued, and delivered to KC in Texas. Brazilian jurors would have little relation to an insurance coverage dispute between two American companies.[4]   In contrast, Texas jurors have an interest in ensuring that Texas insurance policies are enforced and that Texas corporations are treated fairly in insurance coverage disputes.   This factor therefore

_____

[4]Although Continental argues that KC's Brazilian subsidiaries are the real parties in interest in this case, none of the subsidiaries has made a Policy claim, and none is a party to this case.   This dispute is thus between KC and Continental, both American companies.

favors litigating the case in Texas.

C

The court turns next to the interest of holding the trial within the view and reach of those persons whose affairs it touches. Both parties are American companies. The individuals who participated in the negotiations of the Policy are in the United States. The law firm that Continental hired to investigate KC's claim is in Dallas, Texas. But most of the individuals whose actions gave rise to the claim are in Brazil. Fernandes and the individuals from whom the invalid tax credits were bought are in Brazil. The three KC subsidiaries that bought the invalid tax credits are all Brazilian companies. Because of the interest in holding the trial within the view and reach of both American and Brazilian persons, the court concludes that this factor is neutral.

D

The court next addresses the interest in having localized controversies decided at home. This $20 million controversy is between two American companies. Understandably, there is a significant interest in having this controversy decided in the United States. But the underlying facts giving rise to the controversy occurred in Brazil or the United States, depending on which issue or issues are primary. The KC subsidiaries that purchased the invalid tax credits are Brazilian companies. Because this controversy is not localized but rather has significant ties

- 17 -

to both the United States and Brazil, the court concludes that this factor is neutral.

E

The court finally considers the avoidance of unnecessary problems in conflicts of law and the application of foreign law. Because KC asserts a state-law claim, the court applies the choice-of-law rules of Texas, the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

"In Texas, when, as here, a contract does not contain an express choice-of-law provision, a court must determine whether a relevant statute directs the court to apply the laws of a particular state." *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 340 (Tex. App. 2004, pet. denied). KC asserts that Tex. Ins. Code Ann. art. 21.42 (Vernon 1981) directs the court to apply Texas law. Article 21.42 "applies to an insurance contract when: (1) the insurance proceeds are payable to a Texas citizen or inhabitant; (2) the policy is issued by an insurer doing business in Texas; and (3) the policy is issued in the course of the insurer's business in Texas." *Reddy Ice*, 145 S.W.3d at 341. Article 21.42 does not apply here because KC, a Delaware corporation, is not an inhabitant of Texas for purposes of this provision, despite its primary place of business being in Texas. *See id.* at 344 ("Article 21.42 restricts a corporation's inhabitancy to its place of incorporation.").

When no statutory directive governs in a contract dispute, Texas courts apply the "most significant relationship" test set out in Restatement (Second) of Conflict of Laws §§ 6 and 188. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) ("In all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."). The factors the court considers include (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2) (1971). The contacts to be considered in applying these principles include (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the contract's subject matter, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* § 188(2).

The first two contacts point to Texas. The Policy was negotiated and entered into in Texas. With regard to the third

contact, the Policy provides that Continental will make payment "directly to that Named Insured where the loss occurred," i.e. the three subsidiaries, "unless [Continental] receive[s] a request in writing from the Kimberly-Clark Corporation Risk Management Department at Dallas, TX to make such payment to another Named Insured." D. App. 47. KC's Final Proof of Loss, submitted to Continental by KC's Risk Management Department, states that it is KC that "has been injured" and "seeks reimbursement for all available limits under the Policy," not the three subsidiaries. 1st Am. Compl. Ex. B at 3. This is likely sufficient to require Continental to perform by making payment to KC in Texas rather than by making payment to the Brazilian subsidiaries. The fifth contact likewise points to Texas. KC's principal place of business is in Texas, and neither of the parties is incorporated or has its principal place of business in Brazil. Only the fourth contact points somewhat to the application of Brazilian law. The comment to § 188(2) provides: "When the contract . . . affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of . . . the risk is significant." Restatement (Second) of Conflict of Laws § 188(2) cmt. e.

Applying the most significant relationship test, Texas has the most significant relationship to this case. This conclusion is consistent with § 188(3), which provides: "If the place of

negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied. . . ." *Id.* § 188(3). Thus it appears that Texas law would apply if the case were to remain in this forum.

The court will also briefly look at whose law a Brazilian court would apply were this case litigated there. KC maintains that a Brazilian court would apply United States law. Continental does not address what law a Brazilian court would apply. Because Continental bears the burden of proof on every element of the *forum non conveniens* analysis, *see Air Crash*, 821 F.2d at 1164, this court will presume that a Brazilian court would apply Texas law.

Because this court would not need to apply foreign law and a Brazilian court would, this factor favors litigating the case in Texas.

VII

Having considered both the private and public interest factors, the court holds that Continental has not made a showing sufficient to justify dismissing this case on grounds of *forum non conveniens*. Had Continental adequately demonstrated at the time the motion was filed that the contract interpretation issue was not significant, the private and public interest factors might have substantially pointed toward Brazil as a more convenient forum. But Continental has not made this showing. Although Brazil is an available and adequate forum, the private and public interest

factors do not demonstrate that Brazil is a significantly more convenient forum.

\* \* \*

Continental's May 18, 2005 motion to dismiss for *forum non conveniens* is denied.

**SO ORDERED**.

October 19, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE