```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION

KIMBERLY-CLARK CORPORATION,    §
                               §
              Plaintiff,       §
                               § Civil Action No. 3:05-CV-0475-D
VS.                            §
                               §
CONTINENTAL CASUALTY           §
COMPANY,                       §
                               §
              Defendant.       §
```

MEMORANDUM OPINION
AND ORDER

Plaintiff Kimberly-Clark Corporation ("KC") moves to quash the notice of deposition of Thomas J. Falk ("Falk"), its Chairman of the Board and Chief Executive Officer, and for a protective order. Concluding that KC has not made the required showing of good cause, the court denies the motion.

I

The pertinent background facts and procedural history of this multimillion dollar insurance dispute are set out in prior opinions of the court, with which the court assumes the parties are familiar. *See Kimberly-Clark Corp. v. Cont'l Cas. Co.*, 2006 WL 2468712 (N.D. Tex. Aug. 25, 2006) (Fitzwater, J.); *Kimberly-Clark Corp. v. Cont'l Cas. Co.*, 2005 WL 2679698 (N.D. Tex. Oct. 19, 2005) (Fitzwater, J.) *("Kimberly-Clark I")*. As the court noted in *Kimberly-Clark I*, KC sues defendant Continental Casualty Company ("Continental") to recover under the Employee Dishonesty Coverage Form of a crime insurance policy ("Policy") and on related claims.

It alleges that it sustained losses in connection with the purchase of invalid tax credits by three of its Brazilian subsidiaries when the former Controller of a Brazilian subsidiary conspired with tax credit sellers to purchase invalid and worthless third-party tax credits in exchange for bribes.  KC contends that the former Controller's actions resulted in losses of approximately $40 million to the three subsidiaries.  KC made a claim under the Policy, which Continental denied.  *Kimberly-Clark I*, 2005 WL 2679698, at *1.

Continental seeks to depose Falk, KC's Chairman of the Board and Chief Executive Officer.  KC moves to quash the deposition and for a protective order, contending that Continental has waived the right to assert the late-notice affirmative defense to which Falk's testimony relates, and his expected testimony is irrelevant or cumulative and duplicative.  KC maintains that, in view of his numerous, demanding, and sustained duties as KC's most senior executive and Board Chairman, Falk's testimony should not be required for three reasons: the Policy contains a specific endorsement that provides that discovery of a loss occurs when the KC Risk Management Department in Dallas, Texas first becomes aware of facts that would cause a reasonable person to assume that a loss covered by the Policy has been or will be incurred, and Falk has never been an employee of that department; KC has already provided Continental with documents, interrogatory responses, and Fed. R.

Civ. P. 30(b)(6) deposition testimony that relate to discovery of the loss and Falk's knowledge, so any additional deposition testimony would be cumulative and duplicative; and Continental has waived the right to assert a late-notice defense because it conducted a three-year investigation and denied coverage in March 2005, but did not assert the defense until it filed its answer in this lawsuit.

Continental responds that it has not waived the affirmative defense and that Falk's testimony is needed for other reasons; his knowledge regarding KC's discovery of its alleged loss and on additional issues is unique to him and not repetitious; and information obtained from other witnesses concerning Falk's purported knowledge does not preclude it from deposing him because his testimony might vary and could lead to additional admissible evidence, and because the other witnesses had only limited information about his involvement.

II

Under Rule 26(b)(1), and subject to certain limitations not at issue here, a party may obtain discovery regarding any non-privileged matter that is relevant to a claim or defense of any party. The court for good cause may order discovery of any matter relevant to the subject matter involved in the action, and relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence.  Rule 26(c) authorizes the court, for good cause shown, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

> [A] party seeking a protective order to prevent . . . a deposition must show good cause and the specific need for protection. Good cause exists when justice requires the protection of a party or person from any annoyance, embarrassment, oppression, or undue burden or expense. The court must balance the competing interests of allowing discovery and protecting the parties and deponents from undue burdens.

*Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002) (Kaplan, J.) (citations and internal quotation marks omitted). "Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 205 F.R.D 535, 536 (S.D. Ind. 2002) (citing *Six W. Retail Acquisition v. Sony Theatre Mgmt.*, 203 F.R.D. 98 (S.D.N.Y. 2001); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987)).

### III

KC argues as a threshold matter that Continental has waived the right to assert a late-notice defense; therefore, even if Falk's deposition were relevant to such a defense, Continental cannot rely on it and the testimony is irrelevant.

The court holds that KC has not shown good cause for quashal. Where, as here, KC seeks to preclude discovery based on a

substantive argument that, if accepted, would effectively govern the merits of the litigation, the court will require that it demonstrate its right to relief under the same standards that would apply to a final pretrial merits disposition of the issue. In this instance, KC must establish that it would be entitled to partial summary judgment dismissing Continental's defense of late notice.[1]

In its letter denying coverage under the Policy, Continental did not assert lack of notice as a coverage defense. Rather, Continental asserted the defense for the first time in its answer to KC's complaint. KC maintains that by failing to raise the defense to coverage in the denial-of-coverage letter, Continental waived its right to assert the defense.

The case KC relies on for this argument, *Lancon v. Employers National Life Insurance Co.*, 424 S.W.2d 321 (Tex. Civ. App. 1968, writ ref'd n.r.e.), holds that "[w]here the company denies

---

[1]The court rejects Continental's contention that KC cannot raise this argument after the deadline has elapsed for filing summary judgment motions. First, the failure to file a summary judgment motion does not preclude KC from seeking to dismiss this affirmative defense via a Rule 50(a) motion for judgment as a matter of law presented during trial. Second, parties are permitted to object to discovery or to seek a protective order on the basis that the discovery will relate to a claim or defense that lacks merit. *Cf. Ctr. for Biological Diversity v. U.S. Dep't of Hous. & Urban Dev.*, ___ F.R.D. ___, 2006 WL 3234591, at *10 (D. Ariz. May 12, 2006) (noting that it was necessary for court to rule on merits of motion for judgment on the pleadings in order to address motion for protective order and that court had ruled that certain discovery was impermissible because claims were non-justiciable). Thus KC's failure to move for partial summary judgment on this defense does not preclude it from seeking relief under Rule 26(c).

liability or refuses to pay a loss on a specified ground, it is estopped to assert other grounds relieving it from liability of which it had full knowledge *where [the] insured has acted on its position as announced and suffered resultant detriment.*" *Id.* at 322-34 (emphasis added).  In its motion to quash and for a protective order, KC has not carried the burden that it would be required to satisfy in moving for partial summary judgment dismissing this defense.  It simply recites the facts that Continental undertook a nearly three-year investigation of KC's claim, did not assert notice as a coverage defense in its denial-of-coverage letter, and raised it for the first time in its answer, cites *Lancon*, and advances the conclusory assertion that Continental waived the defense, thus rendering Falk's testimony irrelevant, inadmissible, and non-discoverable.  Had KC moved for partial summary judgment on this basis, the court would have denied the motion.² The court will not accomplish indirectly through a discovery ruling a merits decision that it would have declined to enter directly.³

---

²Although the court does not suggest that KC has through its reply brief cured the deficiencies in its initial brief, assuming *arguendo* that it has, the court will not consider arguments made for the first time in a reply brief.  *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.).

³The principal reason the court retained this motion for decision and did not refer it to the magistrate judge is because it presented a substantive issue.  If the parties have further disputes concerning the Falk deposition, the court may refer them

IV

KC contends that Falk's deposition should be quashed because it is irrelevant, since he is not a member of the Risk Management Department and discovery under the Policy relates solely to knowledge of a loss that was obtained by that Department. KC also argues that it is entitled to quashal because extensive discovery regarding Falk's knowledge has already occurred through Rule 30(b)(6) depositions. KC specifically points to the testimony of Randy Arnt ("Arnt"), KC's Executive Director of Global Security, who was the lead investigator in the tax credits scheme matter, Randy Vest ("Vest"), KC's Vice President and Controller, and numerous fact witnesses on the issues of discovery of loss and Falk's knowledge relating to the tax credits. KC also cites its responses to interrogatories and requests for production that relate to these issues.

KC has not demonstrated good cause to quash the deposition. Under Rule 26(b)(1), Continental is entitled to obtain discovery on any non-privileged matter relevant to a claim or defense of KC or Continental. It can procure this discovery from Falk, despite his position as the highest-level KC executive, because it has shown that his personal conduct and knowledge are relevant.

Continental has established Falk's personal involvement in conduct that is relevant to at least some of the issues in this

---

to the magistrate judge, as in the usual case.

case.  It has cited testimony and documentation related to the deposition of Vest that indicates that, in November 2001, Falk reported to the Audit Committee of KC's Board of Directors concerning the tax credit losses and KC's potential exposure related to its Brazilian affiliates' purchase of possibly invalid tax credits.  Continental is entitled to conduct discovery from Falk concerning his knowledge of KC's potential loss, including his sources of information, because it is relevant to whether and when KC——including its Risk Management Department——knew that the loss arose from employee dishonesty, and it is pertinent to the validity of KC's claims generally.

Continental has already attempted to develop discovery about Falk's knowledge and conduct through Interrogatories Nos. 17, 19, and 21.  It has demonstrated that KC's responses do not provide all the discovery to which it is entitled, and that Falk's personal knowledge is relevant in its own right.  Continental should be able to ask Falk directly, under oath, to identify his communications with current and former employees concerning the tax credits, to disclose the earliest date he first became aware that the loss at issue resulted from or was caused by employee dishonesty, and to identify the documents that he reviewed concerning the tax credits and to disclose the dates he reviewed them.  Continental is also entitled to test his answers in light of other evidence that it has

obtained through discovery.[4]  Differences between his testimony and that of other witnesses could enable Continental to challenge their credibility at trial.

The Rule 30(b)(6) witnesses whom KC cites were unable to provide complete information about Falk's involvement and knowledge in the tax scheme matter.  In particular, before Arnt testified, he did not discuss with Falk the details of an October 2001 meeting that Continental contends is important to this lawsuit.

Continental also maintains that it needs to depose Falk individually regarding his knowledge of KC's alleged participation in other tax schemes, which could assist Continental in establishing that KC was the perpetrator, not the victim, of the scheme at issue.  It has also demonstrated that Falk may have knowledge regarding KC's efforts to obtain guarantees for the tax credit purchases in order to obtain a clean opinion from its outside auditors.

The court therefore declines to quash Falk's deposition on the asserted grounds that it is irrelevant, cumulative, and duplicative.

---

[4]In reaching this conclusion, the court suggests neither that these are the only proper areas of inquiry, that specific deposition questions would be proper, nor that potential assertions of privilege or of objections during the deposition would be improper.  The court is addressing here its reasoning for concluding that there are areas of inquiry on which Continental is entitled to take Falk's deposition.

V

The recurring, underlying theme of KC's motion is that Falk's position as the highest-ranking official of a global company entitles him to protection under the circumstances presented here. But in this case Continental has shown that Falk has personal involvement in a multimillion insurance dispute that requires his testimony. This is not a case in which a high-ranking official of a large corporation needs protection from "numerous, repetitive, harassing, and abusive depositions." *In re Bridgestone/Firestone, Inc.*, 205 F.R.D at 536. If it were, the court would not hesitate to grant a protective order.

Moreover, the parties can agree to (or the court can require) measures to protect Falk that are less drastic than quashing the entire deposition. For example, his deposition can be taken at KC's corporate headquarters, under reasonably restrictive time and topical limits calculated to use his time efficiently and to reduce interference with his corporate responsibilities. *See id.* at 536-37.

On the facts presented, and given the available alternative measures, the court declines to quash Falk's deposition.

* * *

For the foregoing reasons, KC's August 15, 2006 motion to quash the deposition of Falk and for a protective order is denied.

**SO ORDERED.**

November 29, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE